IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | | |
|---|---|---|
| AARON FLEMONS<br>ADC #119749,<br><br>Plaintiff<br><br>v.<br><br>DARYL GARDNER,<br><br>Defendant | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Case No. 5:03CV00014 JFF |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Flemons, an inmate confined to the Arkansas Department of Correction, filed this action pursuant to 42 U.S.C. Section 1983 and the Eighth Amendment alleging that on July 12, 2002, Defendant Gardner hit him, pushed him, and placed him in a choke hold which cut off his breathing. After consenting to appear before the undersigned (docket entry #16), the parties appeared for a bench trial on July 19, 2005.

**I.      Findings of Fact**

Plaintiff was housed at the Varner Supermax Unit in July 2002 (Tr. at 21). At the time, Plaintiff was a Class IV with a disciplinary history (Tr. at 29). Plaintiff was housed in 13 barracks, a barracks specifically for inmates with special behavioral problems, such as perversion, assault and any behavior disruptive to the general population (Tr. at 54). Defendant Gardner was a Correctional Officer I in July 2002, and at the time of the hearing he had promoted to Building Sergeant (Tr. at 49-50).

Sgt. Traylor[1] brought Plaintiff back to 13 barracks because he was in an area where he

---

[1] The transcript refers to Sgt. Schrader, but the Court believes based upon testimony that this must be a transcription error. Plaintiff testified that it was Traylor who was involved, not an

was not supposed to be which has been referred to an "out of place assignment." (Tr. at 21-22; 50). When Plaintiff arrived with Traylor at the barracks Gardner exited the control booth area (Tr. at 30). Gardner was working 13 barracks and was instructed to put Plaintiff back in the barracks (Tr. at 50).

Plaintiff called out to Sgt. Traylor regarding his identification badge that he believed Traylor had with him (Tr. at 50). Plaintiff disobeyed Sgt. Traylor's direct order to enter the barracks (Tr. at 27). Flemons remained in the door area to barracks 13 where Gardner needed to enter to perform security checks (Tr. at 50). Officer Gardner gave Plaintiff a direct order to enter the barracks (Tr. at 31), and Plaintiff told Gardner not to place his hands on the Plaintiff (Tr. at 32 and 51).

Plaintiff refused a second order from Gardner to enter the barracks (Tr. at 51). Gardner reached to lead Plaintiff out of the barracks doorway by his arm, and then attempted to restrain Plaintiff after Plaintiff resisted by striking at Gardner (Tr. at 51-52). Plaintiff broke free and ran into the barracks area, and Gardner followed to gain control of Plaintiff (Tr. at 51). Plaintiff testified that Gardner placed him a headlock or choke hold to restrain him inside the barracks and momentarily cut off his breathing (Tr. at 25). Gardner testified that he did grab at Plaintiff's head, shoulder and body until he could gain control of Plaintiff (Tr. at 78-79). Officer Noid arrived and assisted in restraining Plaintiff (Tr. at 51). Plaintiff was taken into the hallway where he was cuffed by Traylor (Tr. at 51 and 55). Because Plaintiff had entered a large open area of barracks 13 that holds up to 54 inmates, Gardner felt it necessary to remove Plaintiff from the barracks because Plaintiff's uncooperative state presented a threat to the control over the other inmates in the area (Tr. at 54 and 61). In addition, officers must always be concerned about the

---

individual named Schrader.

inmate's motivation to disobey an order and then run to a certain area to evade the officer as there is always the concern that other inmates might try to assist another inmate (Tr. at 92-93). For example, during a shakedown of the barracks 13 day room following the incident, a shank was found in the water fountain area (Tr. at 92).

Sgt. Traylor, Sgt. Johnson and COII Rory escorted Plaintiff to the infirmary for pre-lock up (Tr. at 47 and 52). Plaintiff was seen in the infirmary with a red area on his throat and a red spot on his nose. (Tr. at 24 and 35). Plaintiff's neck was sore the day following (Tr. at 26). Plaintiff did not request and was not given any medication, and he did not put in any sick call requests to be seen after the incident (Tr. at 26 and 36). Plaintiff was angry, using profanity, and was arguing when he reported to the infirmary (Tr. at 37).

Gardner charged Plaintiff with several disciplinary violations, and Plaintiff plead guilty to 11-1 insolence to staff, 3-1 out of place assignment and 2-8 resisting apprehension (Tr. at 38-40).

## II.   Conclusions of Law

To prevail on an excessive force claim, Plaintiff must show by a preponderance of the evidence that Defendant used physical force against him and such was excessive and applied not in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm. *Parkus v. Delo*, 135 F.3d 1232, 1234 (8th Cir.1998) (*citing Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the factors which inform this inquiry include the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate. *Id.*

The Court credits the testimony of Gardner in finding that Plaintiff failed to obey several

direct orders to enter the barracks. The motivation Plaintiff offered for "stalling" at the doorway (to look for and ask for his identification badge), presented no cause for disobeying three direct orders from staff. Although Plaintiff testified that he did not strike at Gardner when Gardner attempted to remove him from the doorway and escort him into the hall area, the Court credits the testimony of Gardner on this point. If the foregoing facts were not true, it makes no sense to the Court that Gardner would have entered the day room to restrain him for no reason at all, and especially if Plaintiff had complied with the direct order to enter the barracks. The Court finds no merit to Plaintiff's theory that such was an effort by Gardner to show a trainee how inmates at the Department should be treated. Once Plaintiff disobeyed direct orders, became combative, and attempted to evade Gardner by running into the day area, security concerns required that Gardner take control of Plaintiff and remove him from the area. When Gardner took hold of Plaintiff in the day room, the force used was none greater than was necessary to gain control over the Plaintiff, and Plaintiff suffered no tangible physical injury from the confrontation. Indeed, Plaintiff admits at this point that he was resisting Gardner's apprehension, and thus, it follows that some force was necessary to control him.

     IT IS THEREFORE ORDERED that Judgment will be entered for Defendant Gardner, and Plaintiff's action will be dismissed with prejudice.

     DATED this 8th day of March, 2006.

                                       MAGISTRATE JUDGE
                                       UNITED STATES DISTRICT COURT